UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/23/21
```

Trez Capital (Florida) Corporation,

           Plaintiff,

       –v–

Noroton Heights & Company, LLC,

           Defendant.

20-cv-9622 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

      This action arises from a construction loan agreement between Plaintiff-Counterclaim Defendant Trez Capital (Florida) Corporation, the lender, and Defendant-Counterclaimant Noroton Heights & Company, LLC, the borrower. Before the Court is Trez Capital's motion to amend the Complaint to add claims for attorneys' fees and costs against Noroton's principals, James C. Palmer and Gregory J. Palmer, as guarantors to the loan agreement at issue. Dkt. No. 26, 27. For the reasons that follow, the motion is DENIED.

**I. BACKGROUND**

      On November 15, 2019, Trez Capital and Noroton entered into a construction loan agreement. Under this Agreement, Trez Capital agreed to loan Noroton up to $45,421,114.00 for Noroton's development of a mixed-use shopping center in Darien, Connecticut. Dkt. No. 12 ¶ 1. The loan was to be disbursed via an initial disbursement of $5.9 million upon the closing date of the loan and further disbursements of up to approximately $39.5 million "subject to Noroton's satisfaction of certain terms and conditions set forth in the Loan Agreement within 90 days of the Closing Date." *Id.* ¶ 15 (citing Loan Agreement, Dkt. No. 12-1 § 1.4). "Noroton's obligations

1

to Trez Capital under the Loan Documents, including its obligation to repay the Loan in accordance with their terms, were secured by a first priority mortgage lien in favor of Trez Capital and recorded against the Project." *Id.* ¶ 14.  Finally, on the same day the parties entered into the Loan Agreement, Trez Capital entered into a Limited Recourse Guaranty Agreement with Noroton's principals, which provided for various circumstances in which Trez Capital would have recourse to the principals as guarantors for the obligations of Noroton under the Loan Agreement.  Dkt. No. 28-2.

Following these agreements, Trez Capital disbursed the initial $5.9 million on the closing date, November 15, 2019.  Dkt. No. 12 ¶ 2.  But on March 9, 2020, Trez Capital informed Noroton that it had determined that Noroton failed to satisfy at least five of the future funding requirements.  *Id.* ¶¶ 67–68.  Thus, Trez Capital refused to fund any further disbursements pursuant to § 2.3.2 of the Loan Agreement.  *Id.* ¶ 17.  "On July 2, 2020, Noroton repaid the Loan in full and Trez Capital released its Mortgage Lien recorded against the Project."  *Id.* ¶ 73.

Noroton thereafter abandoned the project.  Dkt. No. 12 ¶ 3.  On August 17, 2020, Noroton sent Trez Capital a letter demanding damages due to Trez Capital's alleged breach of the Loan Agreement.  *Id.* ¶ 74.  Trez Capital subsequently filed a Summons with Notice in the Supreme Court, New York County, in November 2020, seeking a declaratory judgment that it had not breached the Loan Agreement and therefore was not liable for the damages Noroton sought.  *See* Dkt. No. 1-1 at 4.  Trez Capital also sought "reimbursement of its out-of-pocket costs and expenses associated with the parties' dispute, including reasonable attorneys' fees, in accordance with Section 7.8.14 of the Loan Agreement."  *Id*.

Noroton removed the action to this Court on November 16, 2020.  Dkt. No. 1.  Trez Capital filed its Complaint on December 16, 2020, seeking a declaratory judgment that Noroton

"failed to fulfill certain contractual conditions precedent in the Loan Agreement," Trez Capital had not breached the Loan Agreement and was "not responsible for [any] purported damages," and finally sought attorneys' fees and costs pursuant to Sections 7.8.14, 7.8.17, and 11.3 of the Loan Agreement. Dkt. No. 12 ¶ 7. In particular, it alleged that it was "well-within its rights under the Loan Agreement," to refuse further disbursements and that any alleged damages were the result of Noroton's "own lack of diligence" and "external forces" relating to the COVID-19 pandemic. *Id.* ¶¶ 5–6.

Noroton filed its Answer on January 22, 2021, which generally denied Trez Capital's claims, asserted various affirmative defenses, asserted six counterclaims, and demanded a trial by jury. Dkt. No. 13. The Answer also cited some discussions, both oral and written, between Trez Capital and Noroton that occurred before and during the Loan Agreement negotiations. *See, e.g.*, *id.* at 22–23, 49. Trez Capital subsequently filed a reply to Noroton's counterclaims on February 26, 2021, which generally denied the allegations set forth in Noroton's counterclaims and set forth six affirmative defenses in response. Dkt. No. 24.

On March 10, 2021, Trez Capital filed its motion to amend the complaint, which is now before the Court. Dkt. No. 26. Trez Capital seeks leave to add two defendants—James C. Palmer and Gregory J. Palmer in their roles as guarantors—and a third claim for attorneys' fees and costs under Sections 1.1(a)(ix), 1.1(c), and 14 of the Guaranty against the Palmers. Dkt. No. 28-1 ¶¶ 120–27. The proposed amended complaint also includes other substantive amendments independent from the proposed third cause of action. For example, it amends the Second Cause of Action to now rely upon Section 13.4 of the Loan Agreement in seeking attorneys' fees and costs against Noroton, rather than Section 11.3. *Compare* Dkt. No. 12 ¶¶ 89–96, *with* Dkt. No. 28-1 ¶¶ 112–19; *see also* Dkt. No. 28-1 ¶¶ 83–84, 94, 111 (making substantive additions). While

some proposed amendments correct typographical errors or clarify the original allegations, the Court notes that Trez Capital did not bring these numerous changes to the Court's attention in its motion. *See generally* Dkt. Nos. 27, 28.

Noroton filed its opposition to the motion on April 8, 2021. Dkt. No. 36. Trez Capital did not file a reply in support of its motion.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), "a court should freely give leave to amend when justice so requires." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (cleaned up). Notwithstanding this liberal standard, district courts retain "discretion" to "grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). While "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend," *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (internal quotation marks omitted), leave may denied for "good reason," such as "futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy*, 482 F.3d at 200.

Noroton only argues that Trez Capital's proposed amendments would be futile if pled. *See* Dkt. No. 36 at 8. A proposed amended complaint is futile if it "would fail to state a claim on which relief could be granted" under Rule 12(b)(6). *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012). Under that standard, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face.*'" *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "consider[s] the legal sufficiency of [the] complaint, taking its factual allegations to be true[,] and drawing all reasonable inferences

in [Plaintiff]'s favor." *Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany*, 615 F.3d 97, 114 (2d Cir. 2010). "The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (cleaned up). Pertinent here are the Loan Agreement and Limited Recourse Guaranty. The Court need not rely on the Complaint's "description of those terms, but may look to the agreement[s]" themselves. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

**III. DISCUSSION**

As outlined above, Trez Capital moves to add a cause of action against the Palmers, as guarantors of the Loan Agreement, for attorneys' fees and costs under Sections 1.1(a)(ix), 1.1(c), and 14 of the Guaranty. Noroton argues that any obligations the Palmers owed to Trez Capital under the Guaranty terminated when Noroton repaid the loan in full on July 2, 2020, and Trez Capital released its mortgage lien. Dkt. No. 36 at 9. For the foregoing reasons, the Court agrees that Trez Capital's proposed third cause of action fails to plausibly allege a claim for which relief may be granted, thus pleading it would be futile. *See Perfect Pearl*, 889 F. Supp. 2d at 459.

The plain language of the Guaranty makes clear that the agreement has terminated. *See Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*, 93 F.3d 1064, 1073 (2d Cir. 1996) ("A guarantor's obligation must be 'narrowly construed and cannot be extended by construction beyond the plain and explicit language of the contract.'" (quoting *Key Bank v. Burns*, 556 N.Y.S.2d 829, 830 (2d Dep't 1990))); *see also* Limited Recourse Guaranty, Dkt. No. 28-2 § 10 (instructing that agreement is to be "construed in accordance with[] the laws of the state of New York"). Section 9 of the Guaranty provides:

> TERMINATION. Notwithstanding anything herein contained, this Agreement shall remain in full force and effect and shall terminate automatically upon the earlier of (a)

> payment in full of the amount of principal and interest then owing to Lender, or its successors or assigns, and all other sums and payments which may be or become owing under the Mortgage, the Note and the Loan Agreement, and (b) full and satisfactory performance of the Guaranteed Obligations.

Dkt. No. 28-2 § 9.  Trez Capital asserts that the attorneys' fees and costs sought in its proposed third cause of action "are precisely the type of 'other sums and payments' contemplated by Section 9(a) of the Guaranty that have 'become owing' under Sections 7.8.14, 7.8.17 and 13.4 of the Loan Agreement."  Dkt. No. 27 at 19.  It appears to argue that either the Guaranty did not terminate when all outstanding payments were satisfied on July 2, 2020, or the Guaranty previously terminated but was "trigger[ed]," *id.* at 6, during the course of this litigation.  The agreement's clear language demonstrates that the parties did not bargain for either of these outcomes.

      Looking to the termination provision's plain language, the Guaranty "terminate[s] automatically" once all sums owed by the Borrower were paid to the Lender.  This includes the principal and interest that would have accrued at the time the payment was made and other "sums and payments" that could arise under the various loan documents.  Trez Capital does not allege that were any outstanding payments following Noroton's payment on July 2.  *See generally* Dkt. No. 28-1.  Thus, when Noroton paid in full, the Guaranty terminated automatically.  And unlike Sections 7.8.14, 7.8.17, and 13.4 of the Loan Agreement, Sections 1.1(a)(ix), 1.1(c) and 14 of the Guaranty do not expressly state that they survive the termination of the agreement.  *Compare* Dkt. No. 12-1 § 7.8.14 ("The provisions of this Section shall survive the termination of this Agreement and the repayment of the Loan."), *with* Dkt. No. 28-2 §§ 1.1(a)(ix), 1.1(c), 14 (containing no such clause).

      Contrary to Trez Capital's contention, interpreting "sums and payments which may be or become owing" to not reach the sought-after attorneys' fees and costs does not render the phrase

6

"meaningless." Dkt. No. 27 at 19. The Loan Agreement expressly provides for various sums and payments that may arise during the life of the agreements apart from the principal and interest. For example, Section 3 of the Loan Agreement outlines various loan servicing fees that may arise, and Section 11.3 requires the Borrower to pay, *inter alia*, the "costs of title searches and title policy commitments [and] Uniform Commercial Code Searches." Dkt. No. 12-1 §§ 3, 11.3. Rather Trez Capital's proffered interpretation of the termination clause would strip all meaning from the phrase "shall terminate automatically." That interpretation would allow Trez Capital to collect legal costs at any point in the future—"regardless of whether Trez Capital ultimately prevail[ed]" in its efforts to enforce the Guaranty, Dkt. No. 28-1 ¶ 125—and maintain the Palmers' other obligations under the Guaranty, which includes limitations on disposing of assets and real property, *see* Dkt. No. 28-2 §§ 6.1.4, 15. The Court need not accept such "bizarre results" when the Guaranty's termination clause is clear. *See In re Currency Conversion Fee Antitrust Litigation*, 264 F.R.D. 100, 119 (S.D.N.Y. 2010).

      Other provisions in the Guaranty do not alter the conclusion that the agreement has terminated and Trez Capital cannot rely upon it to claim attorneys' fees and costs. Trez Capital points to Section 1.1(a)(ix) of the Guaranty, which provides that the Palmers would pay for any costs arising from interference, "in bad faith, with Lender's exercise of rights or remedies under the Loan Documents (including any foreclosure action or sale) in accordance with the Loan Documents, whether by, [*inter alia*], making any motion, bringing any counterclaim, [and/or] claiming any defense." Dkt. No. 28-2 § 1.1(a)(ix). Relying on the phrase "bringing any counterclaim, claiming any defense," Trez Capital argues that the Palmers' obligations under the Guaranty were "trigger[ed]" by Noroton's assertion of various counterclaims and affirmative defenses in this action. Dkt. No. 27 at 6 (quoting Dkt. No. 28-2 § 1.1(a)(ix)). It argues further

7

that that these obligations are "unconditional, absolute, and irrevocable," and thus the Palmers are barred from "asserting any defenses to liability." *See id.* at 19–20 (quoting Dkt. No. 28-2 § 1.1(a)(ix)); *see also id.* at 19 (arguing the Palmers' liability is "continuing" pursuant to Section 1.3).

Even assuming *arguendo* that Noroton's asserted counterclaims and defenses meet the requirements outlined in Section 1.1(a)(ix)—*e.g.*, the claim is asserted "in bad faith" and for the "sole purpose of . . . impairing the Lender's rights"—Trez Capital fails to plausibly allege how that language overcomes the Guaranty's clear automatic termination clause. As noted above, the Guaranty's termination clause provides: "*Notwithstanding anything herein contained*, this Agreement shall remain in full force and effect and shall *terminate automatically*" upon payment of sums and payments owed. Dkt. No. 28-2 § 9. "When a preposition such as 'notwithstanding any other provision' is included in a contractual provision, that provision overrides any conflicting provisions in the contract." *CNH Diversified Opportunities Master Account, L.P. v. Cleveland Unlimited, Inc.*, 160 N.E.3d 667, 677 (N.Y. 2020). Trez Capital's memorandum of law in support of its motion fails to even grapple with this language. Thus, its cherry-picked phrases do not trump the termination clause and it fails to plausibly allege the Palmers' liability.

In sum, because it would be futile for Trez Capital to plead the proposed third cause of action and add the Palmers as defendants, the Court denies leave to file that portion of the proposed amended complaint.[1] To the extent that Noroton consents to the proposed amended complaint's "amendments that are unrelated to the Third Cause of Action or the Guaranty," the

---

[1] Because the Court finds that the Sections under which Trez Capital asserts a claim for attorneys' fees and costs do not survive the Guaranty's termination, the Court need not address whether Trez Capital could plausibly allege a claim for attorneys' fees and costs against the Palmers under these Sections.

Court grants leave to amend those portions.  Dkt. No. 36 at 25 n.12 (conceding that these amendments "are not futile").

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Trez Capital's motion for leave to file the proposed amended complaint.  To the extent that Noroton consents to the proposed amended complaint's "amendments that are unrelated to the Third Cause of Action or the Guaranty," the Court grants leave to amend those portions.  This resolves Dkt. No. 26.

SO ORDERED.

Dated: August 23, 2021
         New York, New York

_____
ALISON J. NATHAN
United States District Judge