```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                       :
TREZ CAPITAL (FLORIDA) CORPORATION,    :        20cv9622 (DLC)
                                       :
                         Plaintiff,    :        OPINION AND ORDER
              -v-                      :
                                       :
NOROTON HEIGHTS & COMPANY, LLC,        :
                                       :
                         Defendant.    :
                                       :
---------------------------------------X
---------------------------------------X
                                       :
NOROTON HEIGHTS & COMPANY, LLC,        :
                                       :
                         Counterclaim  :
                         Plaintiff,    :
              -v-                      :
                                       :
TREZ CAPITAL (FLORIDA) CORPORATION,    :
                                       :
                         Counterclaim  :
                         Defendant.    :
                                       :
---------------------------------------X
```

APPEARANCES:

For plaintiff/counterclaim defendant Trez Capital (Florida)
Corporation:
Stephen Bruce Meister
Remy Joanna Stocks
Meister Seelig & Fein LLP
125 Park Avenue, 7th fl.
New York, NY 10017

For defendant/counterclaim plaintiff Noroton Heights & Company,
LLC:
Leonard Matthew Braman
Wofsey, Rosen, Kweskin & Kuriansky, LLP
600 Summer St
Stamford, CT 06901

Ryan J. Sestack
Dahn Levine
Gordon Rees Scully Mansukhani LLP
1 Battery Plaza, 28th Floor
New York, NY 10004

DENISE COTE, District Judge:

This action arises out of a contract dispute between the lender Trez Capital (Florida) Corporation ("Trez Capital") and the borrower Noroton Heights & Company LLC ("Noroton"). Noroton has moved to enforce its demand for a jury trial. Because the parties waived the right to a jury trial in their Loan Agreement, the motion is denied.

## **Background**

The events underlying this action are described in an Opinion of August 23, 2021, which is incorporated by reference.[1] See Trez Cap. (Fla.) Corp. v. Noroton Heights & Co., LLC, No. 20-CV-9622 (AJN), 2021 WL 3727352, at *1 (S.D.N.Y. Aug. 23, 2021) ("Trez"). Trez Capital is a non-bank lender. Noroton obtained financing from Trez Capiral to renovate and redevelop a mixed-use shopping center in Darien, Connecticut (the "Project"). On November 15, 2019, Trez Capital and Noroton executed a Loan Agreement in the approximate amount of $45

---

[1] This action initially came before the Honorable Alison Nathan. It was reassigned to this Court on April 10, 2022.

million, secured by a mortgage lien recorded against properties involved in the Project.

The 76-page Loan Agreement provided that Trez Capital would disburse the loan to Noroton in two tranches.  An Initial Funding Amount of $5.9 million would be advanced on the closing date of the Loan, and the remainder of the Loan would be disbursed "subject to Noroton's satisfaction of certain terms and conditions set forth in the Loan Agreement within 90 days of the Closing Date."  Section 2.3.2 of the Loan Agreement set out thirteen conditions, defined as the Future Funding Requirements. In § 13.8, the parties agreed that New York law governs the "construction, validity, and enforceability of all Loan Documents and all of the obligations arising hereunder or thereunder."

Of particular relevance to this motion is § 13.11 of the Loan Agreement, which contains three dispute resolution waivers. Section 13.11 introduces the waivers with a prominent warning:

> Dispute Resolution.  This section contains a jury waiver, arbitration clause, and a class action waiver. READ IT CAREFULLY.

There are four subsections to § 13.11.  Subsection 13.11.1 reads:

> Jury Trial Waiver.  As permitted by applicable law, you and we each waive our respective rights to a trial before a jury in connection with any Dispute (as

> "Dispute" is hereinafter defined), and Disputes shall
> be resolved by a judge sitting without a jury.

"Dispute" is not defined in the Loan Agreement.  Section 1.4 of

the Loan Agreement, entitled "Definitions," refers circularly to

§ 13.11: "'Dispute' shall have the meaning given to such term in

Section 13.11.1 below."

None of the four subsections to § 13.11 describes an

arbitration clause.  Subsection 13.11.2 is described as

"Intentionally Omitted;" § 13.11.3 is a class action waiver; and

§ 13.11.4 is a reliance waiver.  The reliance waiver "certifies"

that the parties have not represented "that the other party

would not seek to enforce jury and class action waivers in the

event of suit," and "acknowledges" that each party had been

"induced to enter into this Agreement by, among other things,

the mutual waivers, agreements, and certifications in this

section."[2]

Upon execution of the Loan Agreement, Trez Capital

disbursed the Initial Funding Amount to Noroton.  It never

advanced the remainder of the loan.

On March 9, 2020, Trez Capital formally notified Noroton

that it had determined that Noroton had failed to meet five of

---

[2] Executed simultaneously with the Loan Agreement were eight
related agreements between Trez Capital, Noroton, and Noroton's
individual principals, who are referred to as the Guarantors.
Each of the guaranties contained a waiver of the right to a jury
trial.

the thirteen Future Funding Requirements, and that as a result
Trez Capital would not disburse further funds.  On July 2, 2020,
Noroton repaid the Initial Funding Amount to Trez Capital in
full, terminating the Loan Agreement pursuant to § 13.1, which
reads: "This Agreement shall survive the making of the Loan and
shall continue so long as any part of the Loan, or any extension
or renewal thereof, remains outstanding."

On August 17, 2020, Noroton sent Trez Capital a letter
alleging breach of the Loan Agreement and demanding damages.
Trez Capital filed an action in New York state court in November
2020 seeking a declaratory judgment that it had not breached the
Loan Agreement and reimbursement of its attorneys' fees and
costs.  Noroton removed the action to this Court on November 16,
2020, and Trez Capital filed its complaint on December 16.  An
Opinion of August 23, 2021 denied Trez Capital's motion to amend
its complaint to add claims against Noroton's individual
principals pursuant to the Limited Recourse Guaranty.  Trez,
2021 WL 3727352, at *1.

Trez Capital filed an amended complaint on October 27,
2021.  On November 27, Noroton filed its answer and
counterclaims, demanded a jury trial, and moved to dismiss Trez
Capital's claim for attorneys' fees and costs.  The motion to
dismiss Trez Capital's claim for attorneys' fees was granted on

April 28, 2022.  <u>Trez Capital (Florida) Corporation v. Noroton</u>

<u>Heights & Company, LLC</u>, No. 20cv9622 (DLC), Order of April 29,

2022.

On May 20, 2022, Noroton moved to enforce its jury trial

demand as to four of its six counterclaims.  The six

counterclaims are for breach of contract, violation of the duty

of good faith and fair dealing, promissory estoppel, unjust

enrichment, negligent misrepresentation, and violation of the

Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-

110a <u>et seq.</u>  Noroton seeks a jury trial on its claims for

breach of contract, good faith and fair dealing, and negligent

misrepresentation, and under Connecticut law.  The motion became

fully submitted on June 28.

## Discussion

I.   Enforceability of the Jury Trial Waiver

The federal right to a jury trial is provided by the

Seventh Amendment to the U.S. Constitution and is "preserved to

the parties inviolate."  Fed. R. Civ. P. 38(a).  Rule 39(a)(2)

provides that when a party demands a trial by jury, the action

shall be designated as a jury action unless "the court upon

motion or of its own initiative finds that a right of trial by

jury of some or all of those issues does not exist."  Fed. R.

Civ. P. 39(a)(2).

Because the enforceability of a jury waiver provision is a procedural issue, "[w]hen asserted in federal court, the right to a jury trial is governed by federal law." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 188 (2d Cir. 2007). "Although the right is fundamental and a presumption exists against its waiver, a contractual waiver is enforceable if it is made knowingly, intentionally, and voluntarily." Id. The burden of proving that a waiver was knowing and intentional rests with the party attempting to enforce the purported waiver. See Nat'l Equip. Rental, Ltd. v. Hendrix, 565 F.2d 255, 258 (2d Cir. 1977).

To determine whether a waiver of a trial by jury was knowing and voluntary, courts have considered the negotiability of the contract terms, the conspicuousness of the jury waiver provision, the disparity in bargaining power between the parties, and the business acumen of the party opposing the waiver. See id.; Morgan Guar. Tr. Co. of N.Y. v. Crane, 36 F. Supp. 2d 602, 603-04 (S.D.N.Y. 1999). This test is "less stringent than the 'intentional relinquishment or abandonment of a known right or privilege' test applicable to other constitutional rights." Bellmore v. Mobil Oil Corp., 783 F.2d 300, 306 (2d Cir. 1986) (citation omitted).

Consideration of all four of these factors demonstrates that Noroton knowingly, voluntarily, and intentionally waived its right to a jury trial.  As an initial matter, the waiver is conspicuous and preceded by a prominent warning in all capital letters ("READ IT CAREFULLY").  The parties were fairly matched in sophistication and bargaining power.  Both Noroton and Trez Capital are sophisticated business entities that were represented by counsel during negotiations.

Noroton contends that the ambiguity created by the absence of a definition of the contractual term "Disputes" renders the jury waiver entirely unenforceable.  Relying on Express Indus. & Terminal Corp. v. New York State Dep't of Transp., 93 N.Y.2d 584 (1999), it argues that it could not have knowingly or voluntarily agreed to a jury waiver that was "impenetrably vague and uncertain."  Id. at 590.

The parties' intention to waive their right to a jury trial in connection with disputes arising from the Loan Agreement is clear and unambiguous.  The waiver was given prominence and is explicit.  It cannot be fairly described as vague.  The reliance waiver in § 13.11.4 underscores the importance of the waiver of the right to a jury trial to the parties.  In that provision each of the parties acknowledges that it was "induced" to enter into the Loan Agreement by the waiver.  The absence of a

definition for the term "Dispute" may impact the scope of the waiver, but it does not make the waiver itself unenforceable. To accept Noroton's argument, the Court would have to ignore a material term in a complex loan agreement between sophisticated parties.  This it will not do.

II.  Scope of the Jury Waiver

Noroton raises two additional arguments.  It argues that the waiver did not survive the termination of the contract upon repayment of the loan in July 2020, and in the alternative that the scope of the waiver does not extend to its claim for negligent misrepresentation.  Both arguments fail.

A.   New York Contract Law

Under New York law, "a fundamental objective of contract interpretation is to give effect to the expressed intention of the parties."  In re MPM Silicones, 874 F.3d 787, 795 (2d Cir. 2017).  "Where the parties' intention is clear from the four corners of the instrument, no ambiguity exists requiring a factual inquiry into intention, and interpretation is a matter of law."  Pharm. Soc. of the State of N.Y., Inc. v. Cuomo, 856 F.2d 497, 501 (2d Cir. 1988).  "The best evidence of what parties to a written agreement intend is what they say in their writing."  Tomhannock, LLC v. Roustabout Res., LLC, 33 N.Y.3d 1080, 1082 (2019) (citation omitted).

"The initial inquiry is whether the contractual language, without reference to sources outside the text of the contract, is ambiguous." In re MPM Silicones, 874 F.3d at 795.  A contract is unambiguous if its "language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 69 (2d Cir. 2014).  "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." Torres v. Walker, 356 F.3d 238, 245 (2d Cir. 2004) (citation omitted).

To determine whether disputed contract language is ambiguous, a court must ask whether it is "ambiguous when read in the context of the entire agreement." Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010) (citation omitted).  "Where consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity." Id. (citation omitted).  In interpreting contracts, "words should be given the meanings ordinarily ascribed to them and absurd results should be avoided." Mastrovincenzo v. City of New York, 435 F.3d 78, 104 (2d Cir. 2006) (citation omitted).

B.   Survival

Noroton argues that the jury waiver clause did not survive
its termination of the Loan Agreement in July 2020 because the
Loan Agreement did not contain an explicit statement that it
would survive.  Noroton points to the inclusion of survival
language in other sections of the Loan Agreement.  Those
sections cover the parties' post-termination obligations with
respect to outstanding expenses and indemnification in the event
of third-party litigation.

The jury waiver applies to litigation between the parties
arising from the Loan Agreement, whether filed before or after
the termination of the Loan Agreement.  The waiver applies to
"any Dispute."  Section 1.9 of the Loan Agreement instructs that
"[t]he term 'any,' as a modifier to any noun, shall be construed
to mean 'any or all' preceding the same noun in the plural."
Thus, the jury waiver applies to any or all Disputes.  A natural
reading of this phrase includes disputes relating to the
agreement whenever they arise.  Here, although the lawsuit was
filed after the termination of the Agreement, the dispute arose
during the life of the Loan Agreement when Trez Capital refused
to provide Noroton with additional funding for its purported
failure to meet five Future Funding Requirements.  Moreover, the
reliance waiver in § 13.11.4 is not limited by time.  It
explains that the parties were induced to enter into the Loan

Agreement because of a jury waiver "in the event of suit."  Of course, a dispute over the termination of an agreement may arise after its termination.

The survival clauses in the Loan Agreement address two issues -- the repayment of Trez Capital's expenses by Noroton and Noroton's promise to indemnify Trez Capital in litigation related to Noroton's use of the property and Noroton's development and sale of the property.  There is no necessary or fair inference that the inclusion of a survival clause in those two circumstances must mean that no other obligations created by the Loan Agreement survive.  This is particularly so with respect to an obligation that, as the Loan Agreement recognizes, induced the parties to enter the Loan Agreement.

Finally, Noroton relies on Pierson v. Empire State Land Assocs., LLC, 886 N.Y.S.2d 411 (2d Dep't 2009), to support its argument.  In a brief order, the Second Department construed a lease cancellation agreement in the context of a personal injury action.  It found that an obligation to indemnify did not survive the lease when the parties had identified certain obligations that did survive.  Id. at 412.  This case is inapposite.  The parties here intended to waive their right to a jury trial in the event of a dispute related to the termination

of the Loan Agreement without any reference to when a lawsuit
prompted by that dispute would be filed.

    C.   Negligent Misrepresentation

    Finally, Noroton argues that the waiver does not extend to
its claim for negligent misrepresentation because that claim
arises out of conduct by Trez Capital that allegedly induced
Noroton to enter the Agreement.  In its counterclaim, Noroton
alleges that Trez Capital misrepresented the security of the
funds available for it to finance the entire loan amount.

    The issues raised by this counterclaim go to the heart of
the parties' contract.  Noroton complains that Trez Capital
unlawfully terminated the contract when it refused to fund the
second tranche of the loan.  There can be no legitimate dispute
that any waiver of the right to a jury trial would include this
core dispute over the termination of the Loan Agreement between
the parties.  Noroton's claim for negligent misrepresentation
about the factual basis for that termination falls well within
the broad scope of the jury waiver.

## Conclusion

Noroton's May 20, 2022 motion to enforce its jury demand is denied.

Dated:      New York, New York
            July 5, 2022

                                    _____
                                        DENISE COTE
                                  United States District Judge