```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
TREZ CAPITAL (FLORIDA) CORP.,          :
                                       :
                         Plaintiff,    :        20cv9622 (DLC)
                                       :
             -v-                       :        OPINION AND ORDER
                                       :
NOROTON HEIGHTS & COMPANY, LLC,        :
                                       :
                         Defendant.    :
                                       :
-------------------------------------- X
-------------------------------------- X
                                       :
NOROTON HEIGHTS & COMPANY, LLC,        :
                                       :
                         Counterclaim  :
                         Plaintiff,    :
             -v-                       :
                                       :
TREZ CAPITAL (FLORIDA) CORPORATION,    :
                                       :
                         Counterclaim  :
                         Defendant.    :
                                       :
-------------------------------------- X
```

APPEARANCES:

For plaintiff Trez Capital (Florida) Corporation:
Stephen Bruce Meister
Remy Joanna Stocks
Meister Seelig & Fein LLP
125 Park Avenue, 7th fl.
New York, NY 10017

For defendant Noroton Heights & Company, LLC:
Justin M. Sher
Yonatan Y. Jacobs
Sher Tremonte LLP
90 Broad Street
New York, NY 10004

Dahn A. Levine

Mercedes Colwin
Ryan James Sestack
Gordon Rees Scully Mansukhani, LLP
1 Battery Park Plaza, 28th Floor
New York, NY 10004

David M. Cohen
Laura Indellicati
Leonard Matthew Braman
Wofsey, Rosen, Kweskin & Kuriansky, LLP
600 Summer Street
Stamford, CT 06901

DENISE COTE, District Judge:

This Opinion addresses a motion _in limine_ from plaintiff

Trez Capital (Florida) Corporation ("Trez") to exclude the

expert report and testimony offered on behalf of defendant

Noroton Heights & Company, LLC ("Noroton") by R. Bruce Gamble.

For the following reasons, the motion is granted.

## Background

The events underlying this action are described in an

Opinion of August 23, 2021, which is incorporated by reference.

See _Trez Cap. (Fla.) Corp. v. Noroton Heights & Co., LLC_, No.

20-CV-9622 (AJN), 2021 WL 3727352 (S.D.N.Y. Aug. 23, 2021).[1]

Briefly, the action arises out of a construction loan agreement

between Trez and Noroton executed on November 15, 2019 (the

"Loan Agreement").  Under the Loan Agreement, Trez promised to

---

[1] This action initially came before the Honorable Alison J.
Nathan.  It was reassigned to this Court on April 10, 2022.

lend up to $45,421,114.00 to Noroton to develop a shopping center in Darien, Connecticut (the "Project").  Trez agreed to disburse an initial amount of $5.9 million upon the closing of the loan but was not obligated to disburse the remainder of the loan unless Noroton satisfied certain conditions precedent (the "Future Funding Requirements") within ninety days of the closing date.

On March 9, 2020, Trez informed Noroton that because it had determined that Noroton had not satisfied the Future Funding Requirements, it would not provide any further disbursements beyond the initial amount of $5.9 million.  The parties disagree over whether Noroton did, in fact, satisfy the Future Funding Requirements and whether, as a result, Trez was required to disburse the additional funds.

I.   Relevant Procedural History

Trez filed this case in state court on November 7, 2020, seeking a declaration that it did not breach the Loan Agreement and did not owe damages to Noroton.  Noroton removed the case to federal court on November 16.  Trez filed an amended complaint on October 27, 2021.  On November 17, Noroton answered the amended complaint and asserted several counterclaims.

On February 26, 2021, Noroton served its initial disclosures, required under Federal Rule of Civil Procedure

26(a)(1).  These initial disclosures did not provide a
computation of damages, nor did they attach or reference any
specific documents or other evidence in support of a damages
calculation.  Instead, the initial disclosures stated that
Noroton had "not at this time finally computed each category of
damages claimed" and promised that Noroton would "provide
further information on and documentation of its damages in fact
and expert discovery in this action."  On October 29, 2021,
Noroton updated its Rule 26 disclosures but again did not
provide a computation of damages nor any evidence supporting a
damages theory.  Noroton did not disclose its damages
calculation to Trez until it served Gamble's expert report on
June 21, 2022.

     During fact discovery in the case, the parties disputed the
extent to which documents produced after a certain date were
discoverable.  In Noroton's view, "as a general matter,"
documents dated after July 2, 2020 -- the date on which Noroton
paid off the initial disbursement from Trez -- were "neither
relevant to the claims or defenses in this action nor
proportional to the needs of the case."  Noroton agreed,
however, to remain open to negotiating specific requests for
documents dated after July 2, 2020.  It does not appear that
Trez ever made specific requests regarding such documents before

the close of fact discovery on May 10, 2022.  But it is also undisputed that Trez had not received Noroton's damages calculation until after the close of fact discovery.  Following receipt of the Gamble expert report on June 21, 2022, Trez opted not to depose Gamble or engage its own damages expert.

II.  Summary of Gamble's Testimony

Gamble is a Senior Managing Director of Ankura Consulting Group, LLC ("Ankura"), which is a consulting firm that provides services in certain industries including real estate, construction, and financial services.  Gamble has several years of experience in real estate in a variety of roles involving financial analysis.  Noroton engaged Gamble as an expert witness "to provide an opinion of the economic loss incurred by Noroton as a result of [Trez's] refusal to continue to fund the parties' construction loan in March 2020."

Gamble estimated Noroton's purported financial losses using two cash flow models -- an "As Planned" Model and an "Alternative" Model.  According to Gamble, "[t]he difference between the two [models] represents the damages that Noroton experienced due to Trez's actions."

The As Planned Model represents the expected outcome had Trez fully funded the loan.  Gamble created the As Planned Model using two sources created before the onset of the COVID-19

pandemic -- an internal Underwriting Transaction Report dated
November 4, 2019 from Trez (the "UTR") and an appraisal by
Cushman & Wakefield of the proposed shopping center as of August
15 and October 29, 2019 (the "Appraisal").  Because the UTR
"only takes a one-year look at the project," Gamble used the
Appraisal, which "provided a third-party's view and a multi-year
cash flow projection," to calculate the expected cash flow from
the project for additional years.  Finally, Gamble considered
other contractual documents that were relevant to the Project.

      The Alternative Model assumes the same general character of
the Project.  Thus, certain assumptions regarding, for example,
the number of residential units and parking spaces, remain the
same as in the As Planned Model.  The Alternative Model,
however, assumes that the business structure of the Project is
altered by the introduction of a joint venture partner who
receives at least 50% of the benefits of the Project.  Gamble
modeled the addition of a joint venture partner on a term sheet
included in a letter of intent provided to Noroton by a third
party.  The Alternative Model also includes certain adjusted
costs to account for the delay purportedly caused by Trez.

      The Alternative Model does not consider any changed
economic circumstances caused by the COVID-19 pandemic.  It does
not account for the fact that the term sheet used to model the

joint venture partnership was never binding and was not ultimately consummated.  And, it does not address publicly available rezoning requests by Noroton that suggest Noroton has changed the fundamental character of its development.

After creating the As Planned and Alternative Models, Gamble calculated the net present value of the difference between the models.  He concluded that it was his "professional opinion to a reasonable degree of certainty that the economic damages suffered by Noroton from Trez's decision not to fund the loan are approximately $14.1 million."

## Discussion

The motion to exclude the expert report and testimony of Gamble is granted.  Gamble's analysis is too speculative to be reliable under the relevant legal standards.  Separately, Noroton failed to disclose Gamble's method of computing damages in a timely manner and therefore cannot rely on the method at trial.

I.   Legal Standards

The admissibility of expert testimony is governed by Federal Rule of Evidence 702.  It provides:

> A witness who is qualified as an expert by knowledge,
> skill, experience, training, or education may testify
> in the form of an opinion or otherwise if:

      (a) the expert's scientific, technical, or other
      specialized knowledge will help the trier of
      fact to understand the evidence or to
      determine a fact in issue;

      (b) the testimony is based on sufficient facts or
      data;

      (c) the testimony is the product of reliable
      principles and methods; and

      (d) the expert has reliably applied the principles
      and methods to the facts of the case.

Fed. R. Evid. 702.

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.  United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007).  The testimony must be relevant, and it must rest on a reliable foundation.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); Williams, 506 F.3d at 160.  An expert's opinion is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702; see Daubert, 509 U.S. at 591.  Expert testimony that invades the province of the fact finder, however, must be excluded.  See United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999).

An expert's opinion must have "a reliable basis in the knowledge and experience of his discipline."  Daubert, 509 U.S. at 592.  A court should consider "the extent to which the

expert's theory has been subjected to peer review and publication, whether the technique is subject to standards controlling the technique's operation, the known or potential rate of error, and the degree of acceptance within the relevant scientific community."  United States v. Ulbricht, 858 F.3d 71, 116 n.50 (2d Cir. 2017) (citation omitted).  This "Daubert reliability assessment" is a "flexible" inquiry, however, and "Daubert is not a definitive checklist or test for the reliability of expert testimony."  Id. (citation omitted).  "[W]hether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the [court] broad latitude to determine."  Id. (citation omitted).

A court must "assess whether the expert employs the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Restivo v. Hessemann, 846 F.3d 547, 577 (2d Cir. 2017) (citation omitted).  Expert testimony should be excluded "if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison."  Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213-14 (2d Cir. 2009) (citation omitted).

To be admissible, an expert's analysis must be reliable "at every step." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). "[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. Id. (emphasis omitted). Moreover, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

Under Federal Rule of Civil Procedure 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26 requires that a party must disclose, among other things, its "computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based . . . ." Fed. R. Civ. P. 26(a)(1)(A)(iii). To determine whether exclusion of a witness is warranted on Rule 26 grounds, courts consider four factors:

> (1) the party's explanation for the failure to comply
> with the disclosure requirement; (2) the importance of
> the testimony of the precluded witnesses; (3) the
> prejudice suffered by the opposing party as a result
> of having to prepare to meet the new testimony; and
> (4) the possibility of a continuance.

Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006).

Finally, under New York law,[2] lost profits may be
recoverable as damages for a breach of contract.  To win lost
profit damages, however

> [f]irst, it must be demonstrated with certainty that
> such damages have been caused by the breach and,
> second, the alleged loss must be capable of proof with
> reasonable certainty.  In other words, the damages may
> not be merely speculative, possible or imaginary, but
> must be reasonably certain and directly traceable to
> the breach, not remote or the result of other
> intervening causes.

Kenford Co., Inc. v. Erie County, 67 N.Y.2d 257, 235 (1986); see
also Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41
F.3d 1570, 1577-78 (2d Cir. 1994).

II. Application

The motion to exclude the expert report and testimony of R.
Bruce Gamble is granted.  The Gamble report is rife with
speculation and conjecture and is not a reliable form of expert
opinion.  See Zerega, 571 F.3d at 213-14.  The report assumes
that the business structure of the development needs to be

---

[2] The Loan Agreement includes a choice of law provision
designating New York state law as the governing law.

changed by adding a joint venture partner.  But Gamble's modeling of the joint venture partner derives from a term sheet in a letter of intent that was not binding and that Noroton now acknowledges was never consummated.  That is, the entire Alternative Model is rooted in assumptions that are speculative, conjectural, and not reliable.

Noroton's counterarguments are unavailing.  Noroton argues that Trez itself suggested that the introduction of a joint venture partner would be necessary without Trez's funding. Gamble similarly opines that the terms of the hypothetical term sheet were reasonable and that his experience suggests they represent arms-length negotiations.  The crucial point, however, is that, without a binding agreement, the financial terms of such a partnership are necessarily speculative.  Something more is needed to justify Gamble's financial assumptions than the ipse dixit that the now-defunct term sheet was reasonable.  See Joiner, 522 U.S. at 146.  This is especially necessary since Gamble asserts that the introduction of the joint venture partnership structure represents the "single biggest change" between the As Planned and Alternative Models.

Additionally, Gamble's analysis is not reliable given the gap between his reasoning and the conclusions he draws regarding the relevant damages standard.  Lost profits are recoverable

under New York law, but only where the amount of damages is
"capable of proof with reasonable certainty."  Accordingly,
Gamble opines that the lost profits he calculates are provable
"to a reasonable degree of certainty."  But Gamble's analysis
does not reliably support this conclusion.  As noted above, the
analysis hinges on a hypothetical joint venture partnership
whose terms are hardly solidified to a reasonable degree of
certainty.  Moreover, the analysis fails to explain whether the
terms on which this hypothetical partnership was based would be
affected by a change in the character of Noroton's development.
In addition, the analysis fails to take into account any
economic effects of the COVID-19 pandemic, which presumably
would have impacted Noroton's costs and projected revenues.
Finally, the zoning changes for the Project, which Noroton
requested and which Gamble does not address, appear to be highly
relevant to any revenue projection.  Thus, there is simply too
great an analytical gap between Gamble's analysis and his
conclusion that the lost profits he calculates are provable "to
a reasonable degree of certainty," as required under New York
law.

Even if the damages calculation were less speculative,
exclusion would still be warranted.  Under Rule 37, if Noroton
failed to disclose its method of computing damages as required

by Rule 26, it cannot rely on this information at trial unless the failure was substantially justified or harmless.  It is undisputed that Noroton never included its method of calculating damages in its Rule 26 disclosures.  Although the damages calculation was ultimately made available to Trez through the disclosure of the Gamble report, this was not until after the close of fact discovery.  During the fact discovery period, Noroton took the position that documents dated after July 2, 2020 were not relevant to the claims.  Nonetheless, the Gamble report relies on certain documents from after this date that are favorable to Noroton.  By disclosing the method of calculating damages after the close of fact discovery, Noroton enabled itself to offer the most favorable picture of its damages without ever disclosing the full universe of potentially relevant documents.  Thus, the failure to disclose the computation method in a timely manner prejudiced Trez.

The balance of the four-factor test for excluding evidence based on untimely disclosure, see Patterson, 440 F.3d at 117, weighs in favor of excluding the Gamble report and testimony. First, Noroton's explanation for the failure to disclose the method of computation in a timely manner is not satisfactory. Noroton argues that its late disclosure was warranted because its damages calculation required expert testimony.  But Noroton

offers no explanation for why it delayed engaging Gamble and
thereby delayed disclosure of its damages computation to Trez.
Further, even without an expert to provide a complete damages
analysis, Noroton should have produced all documents related to
its alleged damages, including documents dated after July 2,
2020, during the period provided for fact discovery, but it did
not.  Therefore, the first factor weighs in favor of exclusion.

The second factor -- on the importance of the testimony --
weighs at most slightly against exclusion.  The Gamble report
is, in some sense, key to Noroton's lost profits damages theory.
For the reasons explained above, however, the report is simply
too flawed to provide admissible evidence in support of its
theory of damages.  Given the applicable standard of "reasonable
certainty" required to win lost profits damages, the speculative
analysis in the Gamble report would not get Noroton very far.
Nonetheless, the Court assumes that the second favor weighs at
least somewhat against exclusion.

Third, the prejudice to Trez based on the failure to
disclose the method of calculating damages is high, and the
third factor accordingly weighs in favor of exclusion.  Without
knowing the method of computation, Trez was unable to understand
the full significance of any produced documents that post-dated
July 2, 2020.  Because the Gamble report was not produced until

after the close of fact discovery, Trez did not have an
opportunity to use document demands and the examination of
witnesses during the depositions taken during the fact discovery
period to test Noroton's damages claim and otherwise prepare its
defense to that claim.

Finally, the fourth factor weighs in favor of exclusion
because a continuance in this case is inappropriate.  The trial
is scheduled to commence in a matter of weeks.  The parties have
already submitted pretrial memoranda and proposed findings of
fact and conclusions of law.  Granting a continuance to conduct
relevant discovery would delay the proceedings unnecessarily and
require the parties to rework their pretrial submissions.  Thus,
the balance of factors weighs in favor of excluding the expert
report and testimony of Gamble based on Noroton's failure to
disclose the method of calculating damages in its Rule 26
disclosures.  See, e.g., Design Strategy, Inc. v. Davis, 469
F.3d 284, 296-97 (2d Cir. 2006) (upholding exclusion of lost
profits evidence where the second Patterson factor weighed
against exclusion but all other factors weighed in favor of
exclusion).

Accordingly, the motion to exclude the report and testimony
of R. Bruce Gamble is granted.  It remains to be seen whether
there are non-speculative items of damages that are capable of

proof with reasonable certainty.  Gamble asserts, for example, that one set of costs incurred by Noroton consists of the costs associated with acquiring a bridge loan.  Because only the expert report and testimony of Gamble are excluded, the parties should discuss whether evidence of these costs or any other items of damages can be proven with reasonable certainty and are fairly admissible at trial.

## Conclusion

The motion to exclude the report and testimony of R. Bruce Gamble is granted.

Dated:    New York, New York
          September 29, 2022

                              _____
                                   DENISE COTE
                          United States District Judge

17